The INTERNATIONAL UNION OF OP-
ERATING ENGINEERS, an unin-
corporated association, Appellant,

v.

METROPOLITAN–GILL–TECON, a joint
venture, composed of Metropolitan Pav-
ing Co., Inc., a corporation, Gill Con-
struction Company, a corporaiton, and
Tecon Corporation, a corporation, Ap-
pellee.

No. 9600.

United States Court of Appeals
Tenth Circuit.

Sept. 5, 1968.

L. N. D. Wells, Jr., Dallas, Tex., (J.
Albert Woll, Washington, D. C., and
Mullinax, Wells, Mauzy, Levy & Richards,
Dallas, Tex., with him on the brief)
for appellant.

Bert Barefoot, Jr. and John A. Claro,
Oklahoma City, Okl., (Edward H. Moler
and Barefoot, Moler, Bohanon & Barth,
Oklahoma City, Okl., of counsel, with
them on the brief) for appellee.

Before MILLER, Senior Circuit
Judge*, and LEWIS and BREITEN-
STEIN, Circuit Judges.

DAVID T. LEWIS, Circuit Judge.

This is an interlocutory appeal, au-
thorized pursuant to 28 U.S.C. § 1292(b),
from an order of the district court over-
ruling defendant-appellant's motion to
dismiss for lack of jurisdiction.

The plaintiff-appellee Metropolitan-
Gill-Tecon is an Oklahoma joint venture,
composed of two Oklahoma corporations
and one Delaware corporation. The sin-
gle defendant is the International Union
of Operating Engineers whose principal
office is in Washington, D. C. Suit was
filed in the United States District Court
for the Western District of Oklahoma
complaining of a strike allegedly conduct-
ed by the union in Colorado in violation
of § 8(b) (4) of the Taft-Hartley Act,
29 U.S.C. § 158(b) (4). The remedial
provision for said violation is § 303 of
the Taft-Hartley Act, 29 U.S.C. § 187,
which permits the bringing of this suit
subject to the provisions and limitations
of § 301 of the act, 29 U.S.C. § 185. The
precise provision under this latter section
with which we are now concerned is the
one relating to jurisdiction set out below:

"(c) For the purposes of actions and
proceedings by or against labor organ-
izations in the district courts of the

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by desig-
nation.

United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."

The language on which this appeal turns and on which this court has once remanded the matter to allow the parties to more fully address themselves,[1] is the grant of jurisdiction under sub. (2) "in any district in which its [union's] duly authorized officers or agents are engaged in representing or acting for employee members."

The principal arguments advanced by the respective parties are relatively simple. The union urges that by inclusion of the words "duly authorized" Congress intended to allow jurisdiction over a given union only where it had officers or agents who were *duly authorized* by such union to do the things specified in the act, that is, to represent or act for employee members. Plaintiff contends that it is immaterial whether there is union authorization to do the specific act. What is necessary, so says plaintiff, is that the party in question be a bona fide, authorized agent of the union who in fact performs the functions giving rise to jurisdiction, i. e., representing or acting for employee members.

In its motion to dismiss the union set out, among other things, the following: It alleged that no duly authorized agent of the international union was engaged in representing or acting for employee members in the Western District of Oklahoma, that it had chartered wholly autonomous local unions who were separate and independent entities, self-governing and transacting business on their own behalf, and whose business it was to represent and act for their employee

members. This motion was further supported by an affidavit of one Arland B. Canny of Oklahoma City, the sole representative of the international union in the Western District of Oklahoma, describing his duties in Oklahoma as "advice and counsel in the administration of the International Union and autonomous local unions in accordance with the Constitution of the International Union"[2] and denying that the international union had any officer or agent in said district engaged in representing or acting for employee members.

To rebut the union's denial and to buttress the allegations of its complaint, the plaintiff, on remand, adduced competent evidence that representative Canny had personally negotiated collective bargaining contracts on behalf of members of affiliated local unions, that he had personally adjusted grievances for such members, that he assisted and counseled them, plus engaged in other activities the listing of which here would only serve to further demonstrate that the court's finding that Canny had performed the functions contemplated by the statute was supported by substantial evidence. There was testimony by employers having contracts with defendant's affiliates that their principal if not only contact had been with Mr. Canny.

On appeal, the union does not contend that the court erred in finding that Canny did the acts specified above. It rather seeks in numerous ways to divorce the international union from responsibility therefor. The principal argument to which we have earlier made reference and will subsequently consider is that Canny acted outside the scope of his authority and was therefore not a *duly authorized* agent within the meaning of the statute. The other exculpating arguments are that, when viewed against the backdrop of the total number of contracts

1. The initial appeal was from the order of the court based only on the complaint, answer and an affidavit supporting the motion to dismiss. Upon proper application by plaintiff this court remanded the cause to the district court for the purpose of taking additional evidence.

2. A copy of said constitution was attached to the affidavit and made a part of the record.

involving affiliate unions, Canny's participation was *de minimis;* [3] that when he performed the acts in question he was the agent of the local affiliate and not the international union; and that he had assisted in collective bargaining because at the time the person in the local who would have normally handled it was elderly and in ill health.[4]

Treating these arguments in brief, it is clear from the record that Canny helped negotiate contracts with more than one local over a period of years and in repeated instances was the key union figure. His explanation by reference to the condition of one union affiliate bargainer was grossly inadequate and of questionable relevancy. See n. 4.

Defendant's entreaty for application of the *de minimis* principle is bottomed on the claim that of 150 contracts involving its affiliate locals in the State of Oklahoma only five [5] were negotiated with the help of Canny.

Apposite to this arithmetic comparison is the fact that international also had a representative named Clark, functioning in the same capacity as Canny but located in Tulsa, Oklahoma where a goodly number of the contracts were negotiated and some with representative Clark as the principal negotiator. An appropriate comparison would either have to reduce the 150 total-contract figure by the number negotiated in the geographical domain of the Tulsa representative, or

increase the international-union-participation number to include those contracts negotiated with the assistance of Clark. In either case the resultant participation percentage would be way beyond application of the *de minimis* rule. See for comparison United States v. Consolidated Laundries Corp., 2 Cir., 291 F.2d 563; NLRB v. Suburban Lumber Co., 3 Cir., 121 F.2d 829.

Indeed it would be convenient for the international union if whenever a representative performed an act which would subject it to jurisdiction it could disavow the agency relationship by simply asserting that such representative by so acting became the agent of the local union, even though to the parties across the table he continues to carry the weighty mantle of authority and force of the international union.[6] The international is not entitled to the best of both worlds— on the one hand being able to swing its weight, and on the other being able to avoid responsibility therefor. The provision [7] authorizing the bringing of this suit incorporates § 301 of the act, subsection (e) [8] of which controls agency questions and makes proper under the facts of this case the application of the doctrine of apparent authority. See United Steelworkers of America v. CCI Corp., 10 Cir., 395 F.2d 529 (filed April 25, 1968).

On the pivotal issue we think that Congress was concerned about the actual fact of union activity in a given area by a bona fide union representative as opposed

---

3. The use of this phrase is defendant's and we repeat it not as a term having significance in labor law but in the sense of being a trifle projected mathematically.

4. The reference to ill health was apparently the language of the trial judge the accuracy of which was not clear from the record. What Canny said was that the subject bargainer was old and that "he did not have the ability to negotiate contracts or to deal with employers."

5. This figure was supplied by defendant though the record indicates the actuality to be probably at least twice that number.

6. Employers who had sat across the table from Mr. Canny during negotiation of

contracts testified that they thought he was representing the international union or both it and the local. At least one employer assumed that membership in one meant membership in both—an opinion not without basis though not necessary to our holding on the agency question.

7. 29 U.S.C. § 187.

8. 29 U.S.C. § 185(e):
"For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."

to the fact of his being authorized or unauthorized to do a particular act. To hold otherwise would be at least a partial victory of form over substance. The Supreme Court has observed that

"The legislative history makes clear that the basic purpose of § 301(a) [the application of which requires resort to § 301(c) herein in question] was not to limit, but to expand, the availability of forums for the enforcement of contracts made by labor organizations." Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 508, 509, 82 S.Ct. 519, 523, 7 L.Ed.2d 483.

In a recent opinion the Supreme Court has analogized the labor union to the corporate entity and noted that Congress has recognized as much in enacting the provision in question, 29 U.S.C. § 185(c), allowing suits against a labor union, as in the case of a corporate entity, "wherever it is doing business," Denver & Rio Grande W. R. R. Co. v. Brotherhood of R. R. Trainmen, 387 U.S. 556, 562, 563, 87 S.Ct. 1746, 1750, 18 L.Ed.2d 954. Though that case arose under the Railway Labor Act rather than the National Labor Relations Act, as is here involved, the Court labeled them parallel federal labor statutes and found support for its liberal construction of the former by assuming that "suits against unions covered by the National Labor Relations Act may be brought anywhere the responsible representatives of the union take concrete action * * *." Id. The emphasis is clearly on the conduct of the "responsible representative" and the actual fact of performing the functions contemplated by the statutes rather than the more abstract notion of what the union has specifically authorized him to do.

■■ It seems elementary that venue-jurisdiction should depend on what a party is actually doing through its authorized representatives in a given area rather than on how it defines responsibilities, functions, etc. in its internal management. The parties across the table and the public in general are concerned with the actual impact of the

presence of a union official and not with the definitions of his function as set out somewhere unbeknown to them. When the union agent is engaged in representing or acting for employee members and reasonably appearing to have authority therefor, it seems inescapable that the subject statute brings his principal within the venue-jurisdiction of the United States district court where the prescribed conduct is occurring.

Affirmed.