Hall H. BAREFOOT et al., Plaintiffs,
Appellees,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, an unincorporated association, Defendant, Appellant,

Local No. 886, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated association, and Transcon Lines Corporation, a corporation, Defendants,

Charles B. Morse, Miles Hamper, Scott Benjamin, and Paul Aldridge, Intervening Plaintiffs.

No. 238-69.

United States Court of Appeals,
Tenth Circuit.

March 31, 1970.

Rehearing Denied June 12, 1970.

L. N. Wells, of Mullinax, Wells, Mauzy & Collins, Dallas, Tex., for defendant-appellant.

Charles Ellis, Oklahoma City, Okl. (Charles R. Nesbitt and Robert N. Naifeh, Oklahoma City, Okl., on the brief) for plaintiffs-appellees and intervening plaintiffs.

Before LEWIS and HILL, Circuit Judges, and LANGLEY, District Judge.

LEWIS, Circuit Judge.

This is an interlocutory appeal, duly certified from the Western District of Oklahoma and authorized pursuant to 28 U.S.C. § 1292(b), taken by the International Brotherhood of Teamsters, etc. (International) following denial by the district court of a motion to dismiss International from the principal case for lack of venue jurisdiction under 29 U.S.C. § 185(c).[1] Plaintiffs in such case are former members of both International and Local 886 (Local) and ex-employees of defendant Transcon Lines Corporation (Transcon). They seek money damages for their alleged wrongful discharge from employment while engaged in a strike. The present appeal probes only the question of whether the allegations of the complaint and correlative facts adduced at an evidentiary hearing show sufficient involvement by International in the course of events surrounding the strike as to lodge jurisdiction in the Oklahoma district court.

Both the Local union and Transcon are located in Oklahoma City, Oklahoma. B. H. Pannell was, at all times relevant to this appeal, the duly elected president of the Local. In May, 1967, several members of the Local employed by Transcon, including the plaintiffs, met with Pannell in order to determine what collective action could be taken by the Local to rectify long-standing labor grievances with Transcon. The employees maintained that working conditions and equipment at Transcon were unsafe in several respects and that Transcon had, for several years prior to this time, refused to remedy these condi-

---

1. 29 U.S.C. § 185(c) states in full:

(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organiza-tion (1) in the district in which such organization maintains it principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

tions. At the meeting it was decided by the membership that in light of Transcon's apparent intransigence no means other than a work shut-down would serve to effect the desired changes. Pannell concurred in the necessity of striking Transcon but advised the union members that neither the Local nor International could officially endorse the strike. The strikers would be covertly supported yet publicly disclaimed by both union organizations. Previous to this meeting, Pannell had repeatedly consulted by telephone with International officials in Dallas concerning the impending confrontation with Transcon, seeking advice and direction from the international organization. As a result of these consultations, Pannell was apprised of the posture to be taken by International should a strike occur and as a further consequence formed his own position, reflected by the Local, to correspond with that stated policy. As found by the court below, Pannell on this and other occasions regarded the advice and instructions obtained from Dallas as "directives" and transmitted the substance of these consultations to the Local members in the same vein. However, there is no evidence in the record to indicate that International officials intended or were attempting to dictate the course of events in Oklahoma City. Rather, the record only supports the inference that International merely indicated what would be the nature of its response to the course of events dictated by the affirmative conduct of the Local union and Transcon.[2]

The strike was executed as planned; the plaintiffs were discharged by Transcon; and neither the Local nor International took action to reinstate them. Evidence was introduced at the evidentiary hearing to the effect that Pannell had consulted further with International after the initiation of the strike and had been "directed" to inform union members that in the event of the discharge of striking Transcon employees, International would sanction the strike and take action to have them reinstated. In this instance, Pannell actually journeyed to Dallas to consult personally with International officials there. However, International had no paid representatives or employees within the Western District of Oklahoma and no representatives were physically sent to the district during the period in question. The relationship between Pannell and International officials consisted only of telephonic communications and at least one consultation in Dallas. The interlocutory issue was thus certified to us as

\* \* \* whether the venue requirements of Section 185(c) are satisfied as to the International Brotherhood of Teamsters by the activities within the district of B. H. Pannell during the period of time indicated, and by the responsible representatives of the International Union headquartered in Dallas advising and representing members of Local 886 by telephone or through consultation with and directions given to B. H. Pannell, or is actual physical presence within the Western District of officers or agents, as such, of the International necessary to sustain venue-jurisdiction under Section 185(c) of Title 29; and, in any event, must there be a showing of the requisite activities by agents at the time suit is filed or is presence at the time the cause of action arose sufficient to meet the venue requirements of Section 185(c).

The issue as so framed would seem to contemplate two possible theories as bases for the imposition of jurisdiction. First, it may be that the court considered the close and continued nexus of

---

2. Pannell was reported by one of plaintiffs' witnesses to have stated "that Dallas had told him there wasn't any legal grounds for them to shut it down, that it had to be a wildcat." No evidence was introduced showing that "Dallas" had instructed or even suggested that the Local should strike, before the plans to do so had, in fact, been laid by the Local itself.

consultations between Pannell and International officials, coupled with the high degree of control which the Teamsters constitution gives the national body over its local affiliates, to have created a principal-agency relationship sufficient to satisfy the venue provision in question. Alternatively, the assertion of venue could be grounded on the theory that actual physical presence within the district is unnecessary since the "directives" issued by International officials had a distinct effect within the district.

■■ If Pannell could be demonstrably established to have been acting as the agent of International according to the general rules of agency, venue over the principal could be sustained on that basis. United Steelworkers of America v. CCI Corp., 10 Cir., 395 F.2d 529, 532; cf. 29 U.S.C. § 185(e). And the appellees contend that both the internal rules of the labor organizations in question and the principle of apparent authority establish that relationship. However, the provisions of the Teamsters constitution do not, standing alone, directly create agency but do grant to the national body broad if not plenary powers of supervision and control over the local affiliates. In International Bro. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America v. United States, 275 F.2d 610, the Fourth Circuit held that these provisions of the labor constitution created a relationship of principal and agent between International and the Local within the meaning of section 185(c): " * * * the local is no autonomous body, but [is] a subdivision of International subject to International's control." 275 F.2d at 614. However, the local union in *Teamsters* was in trusteeship and therefore under the direct and immediate control of International. Indeed, the official of the local found by the court to have been acting as the agent of International had been expressly designated as such by the trustee, an official of International Consequently, it is doubtful that the court meant to base jurisdiction over the national organization solely upon provisions of the union's own rules when it was plainly unnecessary to do so. In any event, the autonomy of the national union organizations, compromised only when statutory and applicable common law rules of agency so indicate, has been long recognized. *See* United Mine Workers of America v. Gibbs, 383 U.S. 715, 736, 86 S.Ct. 1130, 16 L.Ed.2d 218; United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 403, 67 S.Ct. 775, 91 L.Ed. 973. Section 185(c) itself, setting out the criteria for the assertion of venue-jurisdiction over a labor organization, necessarily presupposes the autonomy of a national labor organization; to interpret the statute otherwise would negate the necessity of its existence. We hold that the Teamsters constitution neither establishes nor negatives as a matter of law a relationship of principal-agent controlling the International's responsibility in a particular dispute such as we here consider. As we have earlier said in International Union of Operating Engineers v. Metropolitan-Gill-Tecon, 10 Cir., 400 F.2d 261, 264,

It seems elementary that venue-jurisdiction should depend on what a party is actually doing through its authorized representatives in a given area rather than on how it defines responsibilities, functions, etc. in its internal management. The parties across the table and the public in general are concerned with the actual impact of the presence of a union official and not with the definitions of his function as set out somewhere unbeknown to them.

A contrary rule would allow the labor organizations themselves to establish the contours of federal jurisdiction in any given instance, a situation clearly not contemplated under the statute.

■ An agency relationship may, of course, be established through actual conduct of the parties and regardless of written or other specific authority negativing or limiting the existence or extent

of an agency.[3] The appellee thus argues, as the decision of the district court implies, that Pannell's representation of the strategy which emerged from the consultations with International officials as "directives" constituted such an instance of apparent authority. It is generally understood, however, that the ostensible authorization must result from the words and conduct of the principal rather than the agent. In both United Steelworkers of America v. CCI Corp., *supra*, and International Union of Operating Engineers v. Metropolitan-Gill-Tecon, *supra*, the national organization had dispatched a representative in the district to engage in collective bargaining, a clear instance of conduct by the principal relied upon by those involved in the labor dispute as establishing the authority of that representative. In each case the national organization became subject to the jurisdiction of the district in which bargaining occurred even though the representative had gone beyond his designated sphere of authority. In this case no International representative was sent to Oklahoma City; no designated sphere of authority was ever established. In sum, there is no evidence tending to establish Pannell's apparent or actual authority other than testimony relating to the words and conduct of Pannell himself. Such evidence is insufficient to establish International as Pannell's principal.

In *Metroplitan* we stated that the pivotal consideration in resolving the question of venue-jurisdiction under section 185(c) was "the actual fact of union activity in a given area by a bona fide union representative as opposed to the fact of his being authorized or unauthorized to do a particular act." 400 F. 2d 263, 264. Possibly in light of this statement, the district court considered the degree of influence which International officials apparently exercised over Pannell in the transaction of events under examination, indicating that the creation of ascertainable effect within a given area, even in the absence of the physical presence of a duly authorized agent, was a satisfactory basis for venue. However, the kind of pragmatic analysis contemplated in *Metropolitan* presupposes physical presence of a bona fide representative within the district. Once a national labor organization has manifested its presence in a local labor dispute for the purpose of influencing or dictating union policy, assertion of venue over that organization is clearly contemplated by section 185(c) and cannot be evaded by reliance upon internal rules limiting the agent's authority. Conversely, when, as in the instant case, a labor organization's role in a dispute has been responsive rather than affirmative and conducted outside of the district, then its liability to suit in that district is clearly not contemplated by section 185(c). As a national supervisory organization, it is inevitable that the enunciations of policy, advice and instructions given by International to local affiliates will, when implemented, have an effect on local labor disputes. However, such an effect cannot be equated with the representing or acting for employee members by a duly authorized agent within the district, the criteria established by section 185(c).

The appellant's argument that the venue requirements must exist at the time suit is filed, also certified for review, need not be considered since, as we hold, venue was improper in any event.

The case is remanded to the district court with instructions to grant the motion to dismiss.

3. Restatement (Second) of Agency § 27, sets out the general rule in this respect: * * * Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.