945 F.2d 198
 138 L.R.R.M. (BNA) 2629, 60 USLW 2328,
120 Lab.Cas. P 10,955,
20 Fed.R.Serv.3d 1442
 Donnie REED, Robert T. Hahn, William Winner, Plaintiffs-Appellants,
v.
INTERNATIONAL UNION OF UNITED AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, Local
Union No. 663 of the United Automobile
Workers of America, et al.,
Defendants-Appellees.
 No. 90-1947.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 20, 1991.
Decided Oct. 7, 1991.
 
 Loren J. Comstock, Indianapolis, Ind., for plaintiffs-appellants Donnie Reed, William Winner and Robert D. Hahn.
 Keith E. White, Virginia P. Elliott, Barnes & Thornburg, Barry A. Macey, Nora L. Macey, Mark T. Robbins, Segal & Macey, Indianapolis, Ind., Herbert C. Snyder, Jr., Barnes & Thornburg, Fort Wayne, Ind., M. Jay Whitman, UAW Legal Dept., Detroit, Mich., for defendants-appellees Intern. Union of United Auto., Aerospace & Agr. Implement Workers of America, Local Union No. 663 of United Auto. Workers of America, Local Union No. 499 of United Auto. Workers of America, Local Union No. 1999 of United Auto. Workers of America and General Motors Corp.
 Before WOOD, Jr., CUDAHY and EASTERBROOK, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 This is a dispute over the proper interpretation of a single provision of a collective bargaining agreement. Donnie Reed, Robert Hahn and William Winner[1] brought this hybrid suit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against their employer and their union representatives. They claim that General Motors (GM) breached its 1982 collective bargaining agreement and that the International Union of United Automobile, Aerospace & Agricultural Implement Workers (the International) and Locals 499, 663 and 1999 of the United Automobile Workers of America (collectively the union defendants) breached their duty of fair representation. After dismissing the suit against Local 1999 for lack of personal jurisdiction, the district court granted summary judgment in favor of the remaining defendants. We affirm.
 
 I.
 
 2
 All three plaintiffs--Donnie Reed, Robert Hahn and William Winner--are currently employed by GM. In early 1983, they were on layoff status from GM's Muncie Hydromatic plant in Muncie, Indiana. Under the 1982 collective bargaining agreement, employees who are on layoff from one plant retain "area hire" rights entitling them to be hired before new employees at plants within a 50-mile radius of their home plant. But area hire rights are subordinate to the rehire rights afforded under p 64(e), which requires all employees with rights to their home plant to be returned to work before laid-off employees may be hired from neighboring plants. Employees on layoff from the Muncie plant possess area hire rights at GM's Fisher Guide plant in Anderson, Indiana.
 
 
 3
 Sometime in 1983, pursuant to p 64(e), Fisher Guide began rehiring employees who had been laid off from Fisher Guide prior to October 1, 1979, the effective date of the 1979 agreement, but whose seniority was broken during the course of that agreement. Two years later, in 1985, Reed and Hahn were engaged as area hires at Fisher Guide.[2] Insisting that p 64(e) does not extend to employees who never worked under the 1979 agreement, plaintiffs protest that they should have been hired to work at the Fisher Guide plant before these other employees. They maintain that employees who did not work after the effective date of the 1979 agreement should not have benefited from the 60-month rehire rights provided under p 64(e) of the 1982 agreement. Such employees, plaintiffs contend, are instead limited to the 36-month rehire rights allowed under the 1979 agreement.
 
 
 4
 Plaintiffs attempted to file grievances at their local unions--Local 663 in Anderson, Indiana, Local 499 in Muncie, Indiana and Local 1999 in Oklahoma City, Oklahoma. Each Local refused, however, to pursue grievances without first obtaining guidance from the International as to the proper construction of p 64(e). The International initially provided inconsistent readings of p 64(e). International representatives informed Locals 663 and 1999 that p 64(e) had been properly applied to allow those who had not worked under the 1979 agreement to benefit from the 60-month rehire rights allotted under the 1982 agreement. One International representative, however, responded to Local 499's inquiry with a letter stating in pertinent part:
 
 
 5
 In your example, the employee was hired and laid off under the terms of the 1976 National Agreement. He never worked under the 1979 Agreement so nothing in that Agreement applies to him.... To put it another way, in order for an employee to have benefits under an agreement, he must work under that agreement or be specifically covered under the new agreement.
 
 
 6
 Appellee's Br. at 13 (Letter of Robert Rowe). Focusing upon this one letter in support of their claim, plaintiffs continued to press their Locals to process grievances over the Fisher Guide rehires. The Locals refused, however, because the letter conflicted with the directives they had received from other International representatives.
 
 
 7
 It was not until September 1986 that the International became aware of the contradictory instructions issued by its representatives regarding the proper interpretation of p 64(e). At that time, Robert Walker, the administrative assistant to the International's vice president, gave the matter careful consideration. After extensive research, he issued the following authoritative statement of the International's position:
 
 
 8
 The position of the General Motors Department is that a worker laid off under the terms of the 1976 UAW GM National Agreement, with unbroken seniority as of the effective date of the 1979 National Agreement would be afforded the new 60 month rehire provisions as specified in Paragraph 64(e) of the 1982 National Agreement, even though he did not work under the provisions of the 1979 Agreement.
 
 
 9
 Appellee's Br. at 15. GM concurred in the International's position regarding p 64(e). Seeking to challenge the International's reading of p 64(e), plaintiffs appealed to International President Owen Bieber. Because the International deemed the official interpretation of p 64(e) to be correct, however, plaintiffs' appeal was denied.
 
 
 10
 In April 1987, plaintiffs instituted suit against GM, the International and the various Locals. Ruling that plaintiffs' claim against Local 1999 did not stem from Local 1999's minimal contacts with the state of Indiana, the district court dismissed Local 1999 for want of personal jurisdiction. 705 F.Supp. 1359. After extensive discovery, the court entered summary judgment in favor of the remaining defendants on the ground that plaintiffs failed to adduce material evidence that the union defendants breached their duty of fair representation. The court also awarded costs to the prevailing parties, here the defendants. On appeal, plaintiffs challenge the district court's dismissal of Local 1999 as well as its entry of summary judgment and costs.
 
 II.
 A. Personal Jurisdiction
 
 11
 We review de novo the district court's legal conclusion that Local 1999's contacts with the state of Indiana were inadequate to justify the exercise of personal jurisdiction. The district court properly applied the traditional "minimum contacts" analysis to determine whether to exercise personal jurisdiction over Local 1999. See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (due process demands sufficient connection between defendant and forum state so that maintenance of suit does not offend "traditional notions of fair play and substantial justice").[3] For Indiana's long-arm statute, embodied in Indiana Trial Rule 4.4,[4] has been construed to extend the personal jurisdiction of a federal court sitting in Indiana to the outer limits of due process. See Wallace v. Herron, 778 F.2d 391, 393 (7th Cir.1985); Oddi v. Mariner-Denver, Inc., 461 F.Supp. 306, 308 (S.D.Ind.1978).
 
 
 12
 Indiana's long-arm statute incorporates notions of both general and limited in personam jurisdiction. Under the concept of general in personam jurisdiction (embodied in part 3 of the statute), a court can assert jurisdiction over an out-of-state defendant for injuries that are unrelated to the forum state if the defendant possesses "continuous and systematic general" contacts with the state. Wallace, 778 F.2d at 393. By the principle of limited in personam jurisdiction (incorporated in part 1 of the statute), however, an out-of-state defendant possessing only minimal contacts with the forum state is subject to personal jurisdiction only when the controversy derives from those contacts. See id. (refusing to exercise personal jurisdiction because case did not arise from defendant's one contact with state); Wisconsin Elec. Mfg. Co., Inc. v. Pennant Prod., Inc., 619 F.2d 676 (7th Cir.1980) (exercising personal jurisdiction when defendants' contacts with state were closely related to cause of action).
 
 
 13
 Plaintiffs have failed to show either general or limited personal jurisdiction over Local 1999. All parties concede that Local 1999's only contact with the state of Indiana occurred in February 1984, when several Local 1999 officials met with laid-off employees in Indiana to discuss the Oklahoma City GM plant and the general community. After these meetings, a number of laid-off Indiana employees--including plaintiff Winner--transferred to GM's Oklahoma City plant. But there is no evidence that Local 1999 is engaged in any "continuous or systematic" business in Indiana that would justify exerting general in personam jurisdiction, for Local 1999 represents only employees at the GM plant in Oklahoma City, Oklahoma. And the mere fact that Local 1999 is affiliated with the International should not justify jurisdiction; otherwise local unions would be required to defend suits in every state where their international union has a presence. See Local 670 v. International Union, United Rubber, Cork, Linoleum, and Plastic Workers of America, 822 F.2d 613, 621 (6th Cir.1987) (declining to assert jurisdiction based only upon local union's affiliation with international union because "such a ruling would obligate each local to defend lawsuits in every state in which the International has done business").
 
 
 14
 Nor can plaintiffs establish limited personal jurisdiction over Local 1999. The only possible connection between Local 1999's acts in Indiana and plaintiffs' claim is the fact that one of the three plaintiffs--William Winner--alleges that he moved to Oklahoma City based in part upon the promises and inducements made by Local 1999 officials at the lay-off meeting in Indiana. But Winner is not challenging his move to Oklahoma City. He is, instead, contesting the proper interpretation to be given to the p 64(e) rehire provision for the purpose of acquiring a job at the Fisher Guide plant in Indiana. We agree with the district court that the tenuous connection between Local 1999 officials' limited visits to Indiana and plaintiffs' claim is insufficient to support the exercise of personal jurisdiction. Cf. Pearson v. Furnco Constr. Co., 563 F.2d 815 (7th Cir.1977) (exercising personal jurisdiction in a "close" case over out-of-state union where plaintiffs' cause of action stemmed from allegedly untrue assertions made by union in a letter to Labor Secretary).
 
 B. Fair Representation
 
 15
 The district court properly granted summary judgment in favor of the union defendants upon plaintiffs' fair representation claim. Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment whenever "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." No genuine issue of material fact exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence is not enough: "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." Id. at 249-50, 106 S.Ct. at 2510-11. And we review the district court's entry of summary judgment de novo.
 
 
 16
 Plaintiffs maintain that the union defendants breached their duty of fair representation by refusing to pursue p 64(e) grievances. Yet a union is not obliged to pursue all grievances to arbitration: it may withdraw or settle a grievance based upon its good faith evaluation of the merits. See Vaca v. Sipes, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967) (union breaches duty of fair representation only by engaging in arbitrary, discriminatory or bad faith conduct). For unions are traditionally accorded broad discretion in determining whether and to what extent an employee's grievance should be prosecuted. See Dahnke v. Teamsters Local 695, 906 F.2d 1192 (7th Cir.1990). A union may act upon its reasonable interpretation of a labor contract; it need not prosecute a grievance that it honestly believes lacks merit. See Adams v. Budd Co., 846 F.2d 428 (7th Cir.1988) (refusal to file grievances not a breach of duty of fair representation where union differed with plaintiffs as to merits of grievances and no evidence of hostility); Bache v. American Telephone & Telegraph, 840 F.2d 283, 290 (5th Cir.1988) (union can act upon its own reasonable interpretation of labor contract).
 
 
 17
 In this case, the union defendants considered plaintiffs' claim and rejected it based upon a reasoned evaluation of p 64(e) of the 1982 agreement. p 64(e), the provision at the heart of this dispute, provides:
 
 
 18
 [A]n employe whose seniority is so broken under this Agreement or whose seniority has been broken under the terms of the 1979 National Agreement shall, for a period of sixty (60) months beginning with the employe's last scheduled work day prior to his layoff, retain a right to be rehired in accordance with the seniority the employe had acquired at that plant as of such last day scheduled.
 
 
 19
 Appellee's Br. at 6. The International's reading of p 64(e) is clearly reasonable. It finds support in the plain language of p 64(e) itself, the intent of the negotiating parties and the instructions issued to company employees in a GM handbook. Contrary to plaintiffs' contentions, the initial inconsistency in the International's readings of p 64(e) alone does not create a genuine issue of material fact sufficient for them to survive summary judgment.
 
 
 20
 By its own terms, p 64(e) is not confined solely to employees working under the 1979 agreement. On the contrary, it specifically embraces employees "whose seniority has been broken under the terms of the 1979 National Agreement." It appears, moreover, that the negotiators of the 1982 agreement sought to obtain as much job security for as many employees as possible. The International's construction of p 64(e) certainly furthers this intention. Finally, the International's construction of p 64(e) is the only one in harmony with a company booklet which explains the contract changes implemented in the 1982 agreement: the GM booklet states that p 64(e) covers layoffs under the 1979 agreement even when an employee's former 36-month rehire right has lapsed. See Appellee's Br. at 8. But this section of the booklet makes sense only if p 64(e) is construed (as the International does) to apply to employees laid off before the effective date of the 1979 agreement (October 1979) because only such individuals could possibly have exhausted their 36-month rehire rights by the effective date of the 1982 agreement (April 1982).
 
 
 21
 The state of mind of the union representatives is apparently not at issue in this case, for all parties agree that the International's decision not to prosecute plaintiffs' grievance was deliberate. Plaintiffs argue, however, that the case involves intentional misconduct. See Hoffman v. Lonza, Inc., 658 F.2d 519, 522 (7th Cir.1981) (holding that a union must engage in "intentional misconduct" in order to breach its duty of fair representation). Without evaluating the full relevancy of this approach in these circumstances, we find that plaintiffs have failed to make an adequate showing of hostility. The only evidence plaintiffs are able to muster in support of their allegations of union hostility is one isolated incident involving a local union official. Plaintiffs allege that Chuck Bivens, a committeeman for Local 1999, struck Winner when he attempted to file a grievance in this matter. But plaintiffs have not proved any connection between this one alleged incident and the International's decision not to pursue their grievance. The International has proffered a good faith reason for its decision. Because plaintiffs have not established that any of the union defendants "instigated, supported, ratified or encouraged" the wrongful conduct, Bivens' alleged acts cannot be imputed to the union defendants. See Carbon Fuel Co. v. United Mine Workers of America, 444 U.S. 212, 218, 100 S.Ct. 410, 414, 62 L.Ed.2d 394 (1979).
 
 
 22
 C. Breach of Collective Bargaining Agreement
 
 
 23
 Plaintiffs also allege that GM breached the 1982 agreement by rehiring employees at Fisher Guide in violation of p 64(e). But because plaintiffs failed to prove their claim against the union defendants, we need not consider their claim against GM. For, as plaintiffs concede, an "indispensable predicate" to a finding of liability for breach of a collective bargaining agreement is a showing of a breach in the duty of fair representation. See United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 62, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981); Adams, 846 F.2d at 432.
 
 D. Award of Costs
 
 24
 Finally, plaintiffs contest the award of costs to the defendants. Federal Rule of Civil Procedure 54(d) provides that "costs shall be allowed as of course to the prevailing party, unless the district court otherwise directs." Therefore, as a general matter, the presumption under Rule 54(d) is that a judgment silent as to costs is read as awarding costs to the prevailing party. Despite plaintiffs' argument, however, we do not have a silent judgment here. Although the district court's opinion did not mention costs, the judgment specifies that costs be awarded in accordance with its decision in favor of defendants.
 
 
 25
 Plaintiffs further contend that they should not be forced to shoulder defendants' costs because they brought this suit in good faith and because they do not possess the resources of the defendants. To reverse a district court's award of costs to a prevailing party, it is not enough to establish good faith and a disparity between the parties' financial situations: a party must demonstrate misconduct on the part of the opposing party or indigence. See Congregation of Passion v. Touche, Ross & Co., 854 F.2d 219, 221 (7th Cir.1988) (should generally deny costs only if misconduct by prevailing party or if losing party is unable to pay). Because plaintiffs have demonstrated no such circumstance here, the district court's entry of costs in favor of defendants must be upheld.
 
 III.
 
 26
 The district court properly dismissed Local 1999 for lack of personal jurisdiction because plaintiffs' cause of action does not arise from Local 1999's minimal contacts with the state of Indiana. In light of plaintiffs' failure to adduce any evidence of a breach of the duty of fair representation, the district court properly granted summary judgment in favor of the remaining defendants. The district court's judgment and award of costs in favor of defendants is hereby AFFIRMED.
 
 
 
 [1]
 Reed, Hahn and Winner initially brought suit on behalf of themselves and other similarly situated employees and former employees of GM. Because their notice of appeal failed to name any other plaintiff with the specificity required under Federal Rule of Appellate Procedure 3(c), however, this court ordered the appeal to proceed only as to the three named plaintiffs
 
 
 [2]
 The third plaintiff, William Winner, transferred to a GM plant in Oklahoma City, Oklahoma pursuant to Document 28 of the 1982 agreement, which provides that jobs left open after p 64(e) hires and area hires will be filled with employees on layoff from other GM plants. Document 28 transfers retain their right to recall to their former location
 
 
 [3]
 Section 301(c) of the Labor Management Relations Act provides that "district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." 29 U.S.C. § 185(c). Despite its terms, the section has been held to deal with venue and not with jurisdiction. See Central Operating Co. v. Utility Workers of America, 491 F.2d 245, 250 n. 6 (4th Cir.1974) ("It has been uniformly held that [29 U.S.C.] subsection (c) is a venue provision in spite of the use of the word 'jurisdiction.' "); Barefoot v. International Brotherhood of Teamsters, 424 F.2d 1001, 1002 (10th Cir.1970); United Rubber, Cork, Linoleum and Plastic Workers of America v. Lee Rubber and Tire Corp., 394 F.2d 362, 364 (3rd Cir.), cert. denied, 393 U.S. 835, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968). Regardless whether this section deals with jurisdiction or simply with venue, however, the district court's "minimum contacts" analysis was appropriate because the requirements under both section 301(c) and the due process "minimum contacts" standard have been held to be so similar that analysis under either would yield the same result. See Local 670 v. International Union, United Rubber, Cork, Linoleum, and Plastic Workers of America, 822 F.2d 613, 620-21 (6th Cir.1987) ("[T]he analysis required under either section 301(c) or the traditional rule of 'minimum contacts' is so similar as to render this issue a distinction without a difference.")
 
 
 [4]
 Indiana Trial Rule 4.4 provides in relevant part:
 Any person or organization that is a nonresident of this state ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:
 (1) doing any business in this state,
 (3) causing personal injury or property damage in this state by an occurrence, act, or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state.