822 F.2d 613
 125 L.R.R.M. (BNA) 2969, 56 USLW 2055,
106 Lab.Cas. P 12,436,
107 Lab.Cas. P 10,098, 8 Fed.R.Serv.3d 483
 LOCAL 670, UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS
OF AMERICA, AFL- CIO, in its own behalf and in
behalf of its individual members,
Plaintiff- Appellant, Cross-Appellee,
v.
INTERNATIONAL UNION, UNITED RUBBER, CORK, LINOLEUM AND
PLASTIC WORKERS OF AMERICA, AFL-CIO; Milan Stone;
Bob G. Long and Local 703, Defendants- Appellees,
v.
ARMSTRONG RUBBER COMPANY; R.G. DeAngelo and Russell
Weymouth, Defendants- Appellees, Cross-Appellants.
 Nos. 86-5774, 86-5877.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 19, 1987.
Decided June 26, 1987.
Rehearing and Rehearing En Banc Denied Aug. 13, 1987.
 
 Michael J. Passino, Passino, DeLaney and Hildebrand, Nashville, Tenn., Jane P. North (argued), for Local 670.
 Charles Hampton White, Corneluis and Collins, Nashville, Tenn., for defendants-appellees.
 Cecil D. Branstetter, Nashville, Tenn., Joby Dupuis, Barry J. Bennett, Fresno, Cal., for Local 703.
 Frederick A. Stuart, John N. Raudabaugh (argued), Powell, Goldstein, Frazer, Murphy, Atlanta, Ga., for Armstrong Rubber.
 Before ENGEL and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Local 670 of the United Rubber, Cork, Linoleum and Plastic Workers of America (URW) appeals the dismissal of its hybrid breach of contract/duty of fair representation claim pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. Secs. 185 and 159(a).[1] The district court, after a hearing on the matter, specifically found Local 670's grievance to be arbitrable but dismissed the suit in its entirety due to its inability to join a sister local out of California (Local 703), which the court found to be an indispensable party under Fed.R.Civ.P. 19 without which the court could not, in equity and good conscience, proceed. The employer, Armstrong Rubber Company (company) cross-appeals the finding of arbitrability. Although we agree that Local 670's claim is properly arbitrable, we find the district court's dismissal due to the absence of Local 703 improper under the circumstances of this case. Therefore, the decision below is affirmed in part and reversed in part, and the case is hereby remanded to the district court for further proceedings in accordance with this opinion.
 
 I.
 
 2
 The facts relative to this appeal are simple and largely undisputed. Local 670, an unincorporated labor organization with principal offices in Madison, Tennessee, is one of five URW locals signatory to a master collective bargaining agreement with the company. Together the five locals comprise what is known as the "Armstrong chain," a nationwide group of local unions bargaining in concert with a common employer. The actual contract negotiating is conducted through the International Policy Committee (IPC), on which each local has at least one representative. In addition to the single master agreement, each local union also enters into local supplemental agreements addressing issues specific to that local and supplementing, but not contradicting or amending, the master agreement.
 
 
 3
 The underlying dispute centers on events during and just after negotiations for the parties' 1985 master agreement. A few weeks after all parties had signed both the master agreement and all five local supplemental agreements, the company approached Local 703 of Hanford, California, in an attempt to enter into a wage reduction agreement with that local due to the unprofitability of the California plant. The company contended that, due to excess production capacity, the Hanford operation would be closed unless significant wage reductions were accepted. The company and Local 703 drafted two versions of the wage reduction agreement (the Hanford memoranda). The first Hanford memorandum provided that the agreement was "subject to approval by a majority of the local unions representing a majority of the membership and the International Executive Board." This memorandum was then submitted to a vote of the entire Armstrong chain and was soundly defeated. Immediately thereafter, the parties prepared the second Hanford memorandum with an even larger wage reduction objective than the first.[2] In this memo, however, there was no longer a statement regarding the necessity of majority approval. The agreement was framed as one involving "labor grade changes," stating as follows:
 
 
 4
 [I]n accordance with longstanding and clearly established practices by the parties and consistent with the Collective Bargaining Agreement, the Company and Union have negotiated the following labor grade changes for each specific job classification listed below....
 
 
 5
 Despite deletion of the approval language, the International again submitted this memorandum to a majority vote. It was again defeated by a majority vote of all five locals, although it was approved by a majority of the members of Local 703. At this point, and with the approval of the vice-president of the International, the company implemented the agreement.
 
 
 6
 It was and is Local 670's contention that, by the express terms of the 1985 master agreement, the company had no right to alter the basic wage structure of one local in a local supplemental agreement, and, further, that the only way that any local supplemental agreement can be altered is upon approval by a majority of the local unions representing a majority of the union membership in the Armstrong chain.[3] Because the International had been active in effecting the implementation of the Hanford agreement, Local 670 filed an internal union appeal against it for violations of Local 670's rights under the union constitution. The International Executive Board denied the appeal, stating in part that, since their "argument as to the proper interpretation of Paragraph 56 is obviously one of contract and not Constitutional interpretation ... the proper remedy is to pursue the matter through the grievance procedure."[4]
 
 
 7
 On the day its internal union appeal was denied, the company laid off 64 members of Local 670. It is Local 670's contention that these layoffs were a direct result of the implementation of the drastic wage reductions accomplished by agreement with Local 703 in California. Local 670 then filed a grievance challenging the implementation of the Hanford memorandum and the attendant layoffs pursuant to Article VI of the master agreement.[5] The company refused to process the grievance, stating in part, "we do not think that Local 670, as a representative of the International, is in a position to claim that a breach has occurred." Local 670 then initiated the instant suit, after which the company furloughed an additional 141 employees from the Madison, Tennessee plant, bringing the number of displaced workers to over two hundred.
 
 
 8
 Defendants interposed motions to dismiss for failure to state a claim and failure to join an indispensable party, Local 703. Although the court found that the complaint stated a claim and that the company should be ordered to submit the grievance to arbitration, it further found that Local 703 was an indispensable party within the meaning of Fed.R.Civ.P. 19(a) since "it is the other contracting party with the defendant, Armstrong Rubber Company, in the contract which is the subject of the grievance which the court is directing to be arbitrated." It therefore ordered Local 670 to join Local 703 within ten days. Local 670 issued a summons and complaint to Local 703, along with a letter in which it offered to arbitrate the grievance in California at Local 703's customary site for arbitrations. Although Local 703 did not respond to the offer to arbitrate in California, they did file a motion to quash the service of summons due to lack of personal jurisdiction.
 
 
 9
 After a further hearing, the district court issued its second order, concluding that the court lacked personal jurisdiction over Local 703 and that its presence was so essential to the proceedings that the court was unable to satisfactorily resolve the issues or fashion an adequate remedy in its absence. Noting that "it appears that Local 670 has the ability to pursue its claims elsewhere," the court dismissed the suit.
 
 II.
 Arbitrability of the Grievance
 
 10
 It is well-settled that while arbitration is a matter of contract, the question whether the parties have bound themselves contractually to arbitrate a particular dispute is a question for judicial determination. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The court is to look to the language of the agreement to determine whether "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 582-83, 80 S.Ct. at 1352-53. Moreover, given the existence of an arbitration clause, a presumption of arbitrability arises, with all doubts resolved in favor of coverage. AT & T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (citing Warrior & Gulf, 363 U.S. at 582-83, 80 S.Ct. at 1352-53).
 
 
 11
 Looking to the parties' 1985 master agreement, we find that the arbitration clause, Article VI, Section 10, simply provides that any grievance which is not successfully resolved internally may be appealed to arbitration. A "grievance" is defined as:
 
 
 12
 A complaint, dispute, or controversy in which it is acclaimed [sic] that the Company has failed to comply with an obligation assumed by it under the terms of this Agreement or the supplement thereto, and which involved [sic] either ... (2) a question concerning the meaning, interpretation, scope, or application of this Agreement or the supplements thereto.
 
 
 13
 Local 670's grievance alleged that the company's actions violated Article VIII, Section 18, of the master agreement, which addresses basic wage rates and provides that "[t]he Basic Wage Rates in effect as of the effective date of this agreement shall remain in effect for the duration of this agreement." It further alleged that the bilateral implementation of the Hanford agreement constituted a violation of Article XIV, Section 56, which provides procedures for amendment and termination of the agreement.[6] We agree with the district court's finding that the grievance involves a dispute as to the "meaning, interpretation, scope, or application" of the 1985 master agreement and, as such, is clearly subject to arbitration. As the Supreme Court has recently reaffirmed, the presumption of arbitrability applies when, as here, the agreement contains a broad arbitration clause and there is no "express provision excluding a particular grievance from arbitration." AT & T Technologies, 106 S.Ct. at 1419. The Court reiterated that, in such cases, " 'only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail....' " Id. (quoting Warrior & Gulf, 363 U.S. at 584-85, 80 S.Ct. at 1353-54).
 
 
 14
 The company's claim that this dispute is a non-arbitrable internal union matter is without merit. Because the second Hanford memorandum was approved for implementation by the International's vice-president, the company now alleges that ratification of the agreement was strictly a union matter. However, the International's involvement does not relieve the company, as a party to the 1985 master agreement, of its duties thereunder. It is apparent that the company was well aware of the initial attempts to obtain approval of the Hanford agreement by vote of the membership of all five locals; therefore, it will not now be heard to say that it merely relied in good faith on assurances by the International concerning the required approval process. See Parker v. Local 413, International Brotherhood of Teamsters, 501 F.Supp. 440, 450 (S.D.Ohio 1980), aff'd without opinion, 657 F.2d 269 (6th Cir.1981) (acquiescence in challenged conduct with full knowledge of facts is not "good faith" reliance on union representations).
 
 III.
 Joinder of Local 703 and Rule 19 Dismissal
 
 15
 Assessment of the question of joinder under Rule 19 involves a three-step process. Initially, the court determines whether a person who is not a party should be joined in the action if possible. This first step is embodied in Rule 19(a) as follows:
 
 
 16
 (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
 
 
 17
 If the court determines that the person or entity does not fall within one of these provisions, joinder, as well as further analysis, is unnecessary. However, if the court finds one of the criteria is satisfied, the person is one to be joined if feasible and the issue of the existence of personal jurisdiction arises. If personal jurisdiction is present, the party shall be joined; however, in the absence of personal jurisdiction (or if venue as to the joined party is improper), the party cannot properly be brought before the court. If such is the case, the court proceeds to the third step, which involves an analysis of the factors set forth in Rule 19(b) to determine whether the court may proceed without the absent party or, to the contrary, must dismiss the case due to the indispensability of that party. The four factors set forth in Rule 19(b) include:
 
 
 18
 first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 
 
 19
 The rule is not to be applied in a rigid manner but should instead be governed by the practicalities of the individual case. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 116 n. 12, 88 S.Ct. 733, 741, 19 L.Ed.2d 936 (1968). This court has noted that "[i]deally, all [the] parties would be before the court. Yet Rule 19 calls for a pragmatic approach; simply because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded." Smith v. United Brotherhood of Carpenters and Joiners of America, 685 F.2d 164, 166 (6th Cir.1982) (holding it error to have dismissed Title VII case due to absence of contractors hiring through union).
 
 
 20
 Before turning to our Rule 19 analysis, two issues require some clarification: our standard of review and the importance of the context of this hybrid section 301/unfair representation claim. With respect to the appropriate standard of review, we observe that this court has implicitly adopted the abuse of discretion standard for Rule 19 issues. See Jenkins v. Reneau, 697 F.2d 160, 163 (6th Cir.1983). However, this court and others have found "error" in a district court's dismissal under Rule 19 without resort to the abuse of discretion standard. See United Brotherhood, 685 F.2d at 166 (district court's dismissal was "error"); Pasco International (London), Ltd. v. Stenograph Corp., 637 F.2d 496, 505 and n. 22 (7th Cir.1980) (same). Moreover, a determination that a party is "indispensable," thereby requiring dismissal of an action, represents a legal conclusion reached after balancing the prescribed factors under Rule 19. See, e.g., Challenge Homes, Inc. v. Greater Naples Care Center, Inc., 669 F.2d 667, 669 n. 3 (11th Cir.1982). In that sense, it becomes a conclusion of law which this court reviews de novo. Taylor and Gaskin v. Chris-Craft Industries, 732 F.2d 1273, 1277 (6th Cir.1984). We note in this regard that the district court's conclusion that it was Local 703's contract with Armstrong that was "the subject of the grievance which the court is directing to be arbitrated" was also a conclusion of law reviewable by us de novo.
 
 
 21
 Insofar as context is concerned, it is important to keep in mind that this is a suit to determine whether the parties are required to submit their underlying dispute to arbitration, and not a ruling on the substantive dispute itself. Indeed, a court is precluded from ruling on the potential merits of the underlying claim. AT & T Technologies, 106 S.Ct. at 1419. Both this court and the district court have concluded that the dispute at issue is arbitrable. Under the parties' master collective bargaining agreement, to which all five locals are signatory, the parties have agreed to the voluntary dispute resolution process of binding arbitration. Arbitration takes place system-wide throughout the five-plant Armstrong chain, with an arbitrator chosen from a set panel of five persons agreed upon by all the parties.
 
 
 22
 This context is significant in at least two respects. First, unlike the vast majority of cases under Rule 19, in which the merits of a particular dispute are to be reached in the same forum which is applying Rule 19, here there is inevitably a two-tiered process. The role of the district court is solely to determine whether the parties have agreed to arbitrate a given dispute, whether there has been a breach of that agreement, and to compel arbitration if the answer to both of these questions is affirmative. The second tier occurs when, after the district court compels arbitration, the arbitrator adjudicates the parties' substantive claims pursuant to the voluntary dispute resolution process already agreed to by the parties. As a practical matter then, Local 703's substantive rights ultimately can be determined only by a procedure to which it already voluntarily has committed itself as one of five local unions in the Armstrong chain.
 
 
 23
 Second, the context is significant because of the compelling federal labor policy of requiring parties to honor their promises to arbitrate. The Supreme Court established long ago that an employer could be compelled to arbitrate a jurisdictional dispute, in which two separate unions laid claim to the same work under two different collective bargaining agreements, when only one of the unions was before the court. The Court reasoned:
 
 
 24
 To be sure, only one of the two unions involved in the controversy has moved the state courts to compel arbitration. So unless the other union intervenes, the adjudication of the arbiter might not put an end to the dispute. Yet the arbitration may as a practical matter end the controversy or put into movement forces that will resolve it.
 
 
 25
 Carey v. Westinghouse Electric Corp., 375 U.S. 261, 265, 84 S.Ct. 401, 406, 11 L.Ed.2d 320 (1964) (emphasis added). Despite the possibility of a conflicting subsequent award, and implicitly, despite the absent union's interest, the Supreme Court in Carey held that the employer was compelled to arbitrate. The Court's focus on the practical realities of the arbitration process underscored the "pervasive, curative effect" of the voluntary dispute resolution process lying at the heart of federal labor relations. Id. at 272, 84 S.Ct. at 409.[7] The facts of the present case must be analyzed against the foregoing backdrop.
 
 
 26
 A. Is Local 703 a "Party to be Joined if Feasible"?
 
 
 27
 This is an extremely close issue. Local 703 clearly does not satisfy the criteria of Rule 19(a)(1) because complete relief (i.e., an order either compelling or denying arbitration) can be accorded to the parties before the court. However, under Rule 19(a)(2), Local 703's interest in upholding the validity of its wage reduction agreement and, thereby, the continuation of its workers jobs, is sufficiently "related to" the subject of the action (the question of arbitrability) to make its joinder desirable. Further, we find that the company's risk of incurring inconsistent obligations as a result of arbitrating the question of the validity of its subsequent bilateral agreement without Local 703's presence also renders joinder the preferable course. Local 670 argues persuasively that the company's risk would not be substantial, due to the deference traditionally accorded previous arbitration findings as well as principles of collateral estoppel potentially applicable to local 703 in the face of its refusal to intervene in a proceeding which affects its interest in the contract and of which it clearly had notice. However, we do not consider it wise to subject the company to even this level of risk where, as here, it is easily avoided.[8]
 
 
 28
 B. Could the Court Obtain Personal Jurisdiction Over Local 703?
 
 
 29
 We answer this question in the negative. In ruling on the jurisdictional issue, the district court interpreted section 301(c), 29 U.S.C. Sec. 185(c), by its literal terms as defining the court's jurisdiction for the action to which Local 703 was joined.[9] The court then held that under the guidelines of section 301(c) it did not have jurisdiction over Local 703 and, therefore, it could not properly be joined in the action.
 
 
 30
 The parties now dispute whether section 301(c) is truly a jurisdictional statute or one which merely establishes proper venue for suits by and against labor organizations. Several courts have held, explicitly or implicitly, that the statute relates only to venue, and does not confine the jurisdictional inquiry. See, e.g., Barefoot v. International Brotherhood of Teamsters, 424 F.2d 1001, 1002 (10th Cir.1970) (section constitutes venue provision); United Rubber, Cork, Linoleum and Plastic Workers of America v. Lee Rubber and Tire Corp., 394 F.2d 362, 364 (3d Cir.), cert. denied, 393 U.S. 835, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968) (Congress referring to venue rather than jurisdiction); American Federation of Labor v. Western Union Telegraph Co., 179 F.2d 535, 536 (6th Cir.1950) (section sets forth where such actions may be brought ). However, the analysis required under either section 301(c) or the traditional rules of "minimum contacts" is so similar as to render this issue a distinction without a difference.[10]
 
 
 31
 The trial court's analysis under section 301(c) included a consideration of Local 703's alleged "contacts" with Tennessee, including the facts that (1) it was a signatory of the 1985 master agreement; (2) it is a member of the IPC of the International Union; and (3) representatives of the International visited Tennessee "on Local 703's behalf" to advocate their position. The court found these contacts insufficient under section 301(c) and, in addition, declined to assert jurisdiction on the basis of Local 703's affiliation with the International alone, since such a ruling would obligate each local to defend lawsuits in every state in which the International has done business.[11] We agree.
 
 
 32
 We acknowledge that the absence of physical contacts alone will not defeat jurisdiction if a commercial actor has purposefully directed activities toward out-of-state citizens and litigation results from injuries arising out of, or relating to, those activities. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). However, Local 703 does not fit the traditional mold of a "commercial actor" in that its acts do not result in generating profit for its members by virtue of its out-of-state solicitations. Further, we cannot find that Local 703 in any sense "purposefully availed" itself of the privilege of conducting activities in Tennessee. See Asahi Metal Industry Co., Ltd. v. Superior Court of California, --- U.S. ----, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); World-Wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In sum, we find Local 703's contacts with Tennessee to have been so attenuated as to insulate it from being forced to submit to suit there via the application of either section 301(c) or Tennessee's long-arm statute.[12] International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
 
 
 33
 C. Was Local 703 an Indispensable Party?
 
 
 34
 Analysis of the four factors of Rule 19(b) compels the conclusion that Local 703 was not an indispensable party to this action. In this regard, it is crucial to understand that Local 703's interest is its presence, not in the federal district court proceeding to compel arbitration, but in the actual arbitration that may affect any substantive rights it has regarding the Hanford agreement. This is the point which was misapprehended by the district court and which led it to conclude that Local 703 was an indispensable party to this action. The contract between Local 703 and Armstrong is not the contract which is the subject of Local 670's grievance here. Rather, the company's negotiation of that side agreement is merely the factual predicate for its claim that the company breached its master collective bargaining agreement with Local 670. So understood, it becomes clear that the contract between Local 703 and Armstrong is wholly collateral to the issue in this proceeding, which is the arbitrability of the alleged breach of the contract between the company and Local 670.
 
 
 35
 As counsel for Local 670 pointed out in oral argument, this is a two-tiered proceeding. In this first tier, no conclusion is reached as to the substantive rights of any of the parties. Our sole task is to determine whether Local 670 has succeeded in demonstrating that it and the company intended that this breach of contract claim be resolved through the process of arbitration. While Local 703's presence at the arbitration proceeding may arguably be deemed "indispensable," that is not a question before the court at this time. Local 703's interest in this proceeding is adequately represented by the company, which has the identical interest in not only avoiding arbitration, with its attendant risk of voiding the Hanford agreement, but also in proceeding to arbitration, if necessary, in a location where Local 703 may participate so that the rights and duties of the company with respect to both locals can be effectively determined. Clearly, then, the district court erred in this portion of its analysis by looking solely to the consequences of the substantive outcome of an arbitration hearing conducted in Local 703's absence.[13]
 
 
 36
 The second provision of Rule 19(b) specifically confers upon the court the power to include "protective provisions in the judgment" to lessen or avoid any prejudice. Here, any prejudice to Local 703 of participating in an arbitration proceeding in Tennessee can be totally eliminated by ordering that the arbitration be held in California, a proposal already advanced by Local 670.[14] Such an order would be adequate to insure that the interests of all three parties are protected in the subsequent arbitration proceeding, thereby satisfying the third Rule 19(b) factor.
 
 
 37
 Finally, although it appears that Local 670 did have an alternate forum available at the time of the district court's dismissal, which occurred approximately four and one-half months after the likely accrual date of its cause of action, see DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), that possibility was not clearly established. Upon filing in another court, Local 670 could have been subjected to claims of a statute of limitations bar depending on the date on which its claim was held to have begun accruing. See Shapiro v. Cook United, Inc., 762 F.2d 49 (6th Cir.1985) (claim accrues under section 10(b) when party discovers, or should have discovered, acts constituting alleged violation). Moreover, the potential existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice. Some additional interest of either the absent party, the other properly joined parties or entities, or the judicial system must also be present. Pasco International, 637 F.2d at 501.
 
 
 38
 Based on the foregoing, this case is REMANDED to the district court for the entry of an appropriate order compelling arbitration under circumstances which will protect the interests of all involved parties. It will further be necessary for the district court to address Local 670's other contentions and claims for relief, e.g., its requests for the production of documents, injunctive relief, and damages, in conjunction with its order. We leave resolution of these ancillary matters to the district court's discretion.
 
 
 
 [1]
 This is an expedited appeal as of right pursuant to Rule 3(d) of the Federal Rules of Appellate Procedure, 28 U.S.C. Sec. 1291 and 29 U.S.C. Sec. 110
 
 
 [2]
 It appears that this agreement effected approximately a $2.90 per hour wage reduction at the Hanford plant
 
 
 [3]
 This argument is based on Article VIII, Section 18, which provides, in relevant part: "The Basic Wage Rates in effect as of the effective date of this agreement shall remain in effect for the duration of this agreement;" and on Article XIV, Section 56 which reads, in pertinent part:
 Section 56--Effective Date, Amendment and Termination
 (a) This Agreement and each location's Supplemental Agreement, including any agreed upon changes, shall become effective at each plant at the time of ratification by the Local Union, provided this Agreement has been approved by a majority of the Local Unions representing a majority of the membership and the International Executive Board of the Union....
 (b) This Agreement and the Local Supplements thereto, may be amended by mutual agreement between the parties.
 
 
 [4]
 Among Local 670's allegations of unfair representation are charges relating both to the International Union's active assistance to Local 703 in implementing its wage reduction agreement as well as failure to provide requested documents relative to both its grievance and its internal appeal
 
 
 [5]
 Article VI, Section 8, provides that:
 A grievance is a complaint, dispute, or controversy in which it is acclaimed that the Company has failed to comply with an obligation assumed by it under the terms of this Agreement or the supplements thereto, and which involved ... (2) a question concerning the meaning, interpretation, scope, or application of this Agreement or the supplements thereto....
 Further, Article VI, Section 10 of the contract establishes a set panel of five arbitrators who will serve as arbitrators for the five Armstrong locals under the collective bargaining agreement; the contract also provides for final and binding arbitration.
 
 
 [6]
 See supra note 3
 
 
 [7]
 Since this case arose in state court, no explicit Rule 19 analysis was applied. However, the Court's rationale and its recognition of the unique aspects of the labor arbitration context are highly relevant to Rule 19 analysis. The District of Columbia Circuit recently relied on Carey in holding that the lower court erred in enjoining a scheduled arbitration because of the possibility that a party would be subject to inconsistent arbitration awards. In re Meba Pacific Coast District, 114 L.R.R.M. 3431, 3436 (D.C.Cir.1983)
 
 
 [8]
 We stress that we consider it highly questionable whether Local 703 even qualifies as a person to be joined if feasible under Rule 19(a). However, Local 670 has voluntarily offered to participate in the arbitration proceeding in California, Local 703's home state. Therefore, due to the ease of fashioning relief under Rule 19(b) which will serve the interests of all the parties involved, we assume, without deciding, that Local 703 qualifies for joinder under Rule 19(a)
 
 
 [9]
 Section 301(c) provides:
 Jurisdiction
 (c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.
 
 
 [10]
 In support, we observe that Rule 19(a) specifically provides for the dismissal of a desirable party, upon objection, in all cases where "joinder would render the venue of the action improper."
 
 
 [11]
 We do not mean to imply that an International Union cannot exercise sufficient control and dominion over its member locals as to support a finding that they effectively act as an agent for each individual local in dealing with other locals. Such a theory might prevail upon a showing that the International so substantially participated in, condoned, ratified, or aided a particular local, at the request or instigation of the local, as to impute the International's actions for its benefit to that local. See Bacino v. American Federation of Musicians, 407 F.Supp. 548, 553-54 (N.D.Ill.1976). However, the International's actions here, which apparently consisted of polling the individual locals on their views as to whether Local 703's wage agreement was required to be put to a vote of all five units, does not rise to the requisite level to invoke agency status
 
 
 [12]
 In pertinent part, Tenn. Code Ann. Sec. 20-2-214 (1980) provides:
 20-2-214 Jurisdiction of persons unavailable to personal service in state--classes of actions to which actionable.--(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
 ....
 (6) Any basis not inconsistent with the constitution of this state or of the United States;
 
 
 [13]
 Illustratively, the court stated that: "Although concerned with the loss of jobs by the workers represented by Local 670, the Court shares the same concern for the welfare of the workers at Armstrong's Hanford, California plant. Specifically, this Court is concerned that a ruling in Tennessee may result in job losses at the Hanford plant, despite the lack of any participation by Local 703 in the Tennessee decision-making process."
 
 
 [14]
 Local 670 additionally proffers the suggestion that the district court direct the company and Local 670 to agree that the company would petition the arbitrator unopposed for an interpleader to compel Local 703's attendance as a party to the arbitration. Given that all the parties are signatories to the same master agreement, which gives a panel of designated arbitrators the commission to issue final and binding resolutions, it does not appear that an arbitral interpleader would face any jurisdictional bars. However, this is an issue for the district court to consider and, in view of the fact that we have indicated that the arbitration should be ordered conducted in California, any further attempt to insure Local 703's presence may be superfluous