954 F.2d 1174
 60 USLW 2487, 129 P.U.R.4th 224
 MICHIGAN COALITION OF RADIOACTIVE MATERIAL USERS, INC.,
Plaintiff-Appellee,
v.
Jerry GRIEPENTROG, Director of the Nevada Department of
Human Resources; Christine Gregoire, Director of the
Washington Department of Ecology; John P. Pate, Chairman of
the South Carolina Board of Health and Environmental
Control, Defendants-Appellants.
 No. 91-1801.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 12, 1991.
Decided Jan. 24, 1992.
Order Feb. 14, 1992.
Rehearing Denied March 2, 1992.
 
 Charles J. Cooper, David R. Lewis, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Max R. Hoffman, Jr., Richard C. Kraus (argued and briefed), Farhat, Story & Kraus, Charles R. Toy, Michael S. Green, House Republican Programs & Policies, Lansing, Mich., for plaintiff-appellee.
 David J. Bloss, Roberts, Betz & Bloss, Grand Rapids, Mich., for defendants-appellants.
 Frankie Sue Del Papa, Nancy Ford Angres, Atty. Gen.'s Office, Dept. of Human Resources, Carson City, Nev., for defendant-appellant Griepentrog.
 Allen T. Miller, Jr. (argued and briefed), Kenneth O. Eikenberry (briefed), Atty. Gen.'s Office, State of Wash., Olympia, Wash., for defendant-appellant Gregoire.
 Walton J. McLeod, III, Samuel L. Finklea, III (argued), Dept. of Health & Environmental Control, Office of General Counsel, T. Travis Medlock, James Patrick Hudson, Atty. Gen.'s Office, Columbia, S.C., for defendant-appellant Pate.
 Before MARTIN and SUHRHEINRICH, Circuit Judges, and PECK, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Three state officials from Nevada, Washington, and South Carolina appeal the district court's permanent injunction that required those states to accept low-level radioactive waste generated in Michigan. 769 F.Supp. 999. An opinion addressing the issue of the stay in this case was issued on September 24, 1991 and is reported at 945 F.2d 150 (6th Cir.1991).
 
 
 2
 The named defendants, Jerry Griepentrog of Nevada, Christine Gregoire of Washington, and John Pate of South Carolina, argue that under the three-part standard for in personam jurisdiction we announced in Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir.1968), the district court in Michigan has no jurisdiction over them. They argue the district court erred in finding that they lack authority pursuant to 42 U.S.C. § 2021e to bar Michigan generators of low-level nuclear waste access to disposal sites in the three states when they found that Michigan was no longer in compliance with the Low-Level Radioactive Waste Policy Amendments Act of 1985.
 
 
 3
 Defendants administer the operation of low-level radioactive waste disposal sites located in these states. There are only three such sites in the United States: the Beatty site in Nevada, the Richland site in Washington, and the Barnwell site in South Carolina. These "sited states", as they are called, objected to the handling of low-level nuclear waste generated by other states and attempted to restrict access to their disposal systems. In 1980, Congress responded by passing the Low-Level Radioactive Waste Policy Act, 42 U.S.C. § 2021b-2021d, in an effort to motivate other states to assume some of the burden for disposal of such waste. Because progress to this end was slow, Congress amended the Act in 1985, adding specific incentives and penalties to encourage other states to develop disposal capacities by December 31, 1992. 42 U.S.C. § 2021b et seq. Pursuant to the scheme established by the amended Act, specifically provisions (b) through (g) of § 2021e, the sited states are required to make their disposal capacity available for low-level radioactive waste from non-sited states for the period between January 1, 1986, through December 31, 1992.
 
 
 4
 In 1990, the defendants concluded that Michigan was not in compliance with the Act and effective November 10, 1990, denied waste generators in Michigan access to their disposal facilities. The plaintiff, the Michigan Coalition of Radioactive Material Users, Inc., is an association whose members engage in the use of radioactive materials and who generate low-level radioactive waste. MICHRAD, as the Coalition calls itself, filed suit seeking declaratory and injunctive relief prohibiting the defendants from denying MICHRAD access to the waste disposal facilities located in the defendants' states. The district court found that it had personal jurisdiction over the defendants because the defendants' purposeful actions directed at the state of Michigan affected Michigan residents. The district court then found for MICHRAD, holding that Michigan had complied with the requirements of the Act and that the defendants had no authority to deny waste generators in Michigan access to the sited states' facilities prior to January 1, 1993. The district court permanently enjoined the defendants from denying access to disposal facilities in their respective states for disposal of low-level radioactive waste generated in Michigan prior to January 1, 1993.
 
 
 5
 A court has personal jurisdiction over a defendant if the defendant is amenable to service of process under the state's long-arm statute, Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104-05, 108 S.Ct. 404, 409-10, 98 L.Ed.2d 415 (1987), and if the exercise of personal jurisdiction would not deny the defendants due process, Southern Machine, 401 F.2d at 376. Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one. Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1150-51 (6th Cir.1990). The Supreme Court stated that a fundamental test in personal jurisdiction is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court [in the forum state]." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In Southern Machine, we announced the three-part test to determine whether the exercise of personal jurisdiction is consistent with the requirements of due process:
 
 
 6
 First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.
 
 
 7
 Southern Machine, 401 F.2d at 381.
 
 
 8
 In applying the three-part test to the defendants, the district court relied heavily upon the consequential nature of the defendant's activities as they affected the state of Michigan:
 
 
 9
 It is hard to conceive of any action more purposefully directed toward the forum state than that allegedly taken by the defendants. Plaintiff's cause of action arises from defendants' refusal to allow Michigan waste generators to use the disposal facilities in their states. Plaintiff has presented evidence that defendants, acting in concert, sent letters to Michigan's governor, other public officials and Michigan waste generators, first threatening to deny access to their disposal facilities if certain legislative action were not taken, and then in fact carrying out that threat. The purpose of defendants' activities was to affect Michigan legislation. The consequence of defendants' actions is that 53 licensed generators in Michigan can not dispose of low-level radioactive waste and must store it on site.
 
 
 10
 The district court found that the defendants' "concerted action aimed solely at the State of Michigan to impact Michigan residents" satisfied the first two prongs of the Southern Machine test. In response to the defendants' argument that they did not solicit business in Michigan, the court stated that this was irrelevant as long as the defendants created continuing obligations between themselves and Michigan residents. Reviewing the record, we find no factual basis for the district court's finding. The district court then concluded that in this case, the first two parts of the Southern Machine test had been satisfied, and the inference that the third part was satisfied was reasonable. First National Bank v. J.W. Brewer Tire Co., 680 F.2d 1123, 1126 (6th Cir.1982) (when first two elements are met, inference arises that the third element of fairness has also been met; only the unusual case will not satisfy the third criterion). Applying the balancing test from Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the court found that personal jurisdiction over the defendants would be reasonable. Id. at 476-77, 105 S.Ct. at 2184-85 (court held that in determining whether grant of personal jurisdiction met International Shoe [Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ] test of minimum contacts, courts should balance several factors including burden on defendant and forum state's interest in adjudicating dispute).
 
 
 11
 The district court erred in finding that the defendants' actions gave rise to personal jurisdiction under the Southern Machine three-part test. In reviewing the record, we find that the defendants' actions did not satisfy the Southern Machine three-part test. The record indicates that the defendants have not acted in a fashion so as to purposefully avail themselves of the "privileges of ... causing a consequence in the forum state." Southern Machine, 401 F.2d at 381. The record is bare of any proof that the defendants availed themselves of any of the "benefits and protections" of Michigan law. Burger King, 471 U.S. at 476, 105 S.Ct. at 2184; Lak v. Deer Creek Enterprises, 885 F.2d 1293, 1295 (6th Cir.1989) ("A showing that [defendant] purposefully availed itself of the benefits and protections of Michigan law is essential to the plaintiff's jurisdictional claim"). The district court misconstrued the defendants' compliance with federal law as purposeful actions. MICHRAD is suffering from the consequences of actions, or perhaps more aptly labeled, the inaction of Michigan's legislature. There can be no finding of personal jurisdiction based on consequences which arise from the defendants' actions when, in reality, the consequences complained of arise from the actions of the forum state legislature. This record does not support the finding that the defendants "invoke[d] the benefits and protections of Michigan's laws." Lak, 885 F.2d at 1293. The defendants' sole contact with Michigan has been through telephone conversations and letters sent to Michigan's governor. Telephone conversations and letters are insufficient to fulfill the first part of the Southern Machine test. See Lak, 885 F.2d at 1301 (Michigan long-arm statute held not to confer jurisdiction over out-of-state defendant who had dealt with Michigan plaintiff only over telephone and through letters); Rann v. W.P. McInnis, 789 F.2d 374 (6th Cir.1986) (telephone calls to resident and injury in Michigan held not to establish personal jurisdiction). See also Peterson v. Kennedy, 771 F.2d 1244, 1261-62 (9th Cir.1985) (multiple telephone calls and letters held not to be sufficient to meet the "purposeful availment" requirement); Thomas P. Gonzalez Corp. v. Consejo Nacionel de Produccion de Costa Rica, 614 F.2d 1247, 1254 (9th Cir.1980). The defendants have never solicited business in Michigan, nor did the defendants induce Michigan to use the disposal sites in the defendants' states. The defendants' states have undertaken no economic activity in the state of Michigan in relation to the disposal sites. The record indicates that it was MICHRAD who availed itself of the privileges of doing business in the defendants' states.
 
 
 12
 Under the second part of the Southern Machine test, MICHRAD's cause of action must result from the defendants' activities in the forum state. See Lak, 885 F.2d at 1303. The defendants have not engaged in any activities in Michigan. As we have already stated, the mere evidence of telephone calls and letters will not suffice as evidence of threshold activity in a forum state. The injury of which MICHRAD complains arises from decisions by Michigan's legislature to forego compliance with the Low-Level Radioactive Waste Act. In finding personal jurisdiction in the instant case, the district court relied on Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) and Mad Hatter, Inc. v. Mad Hatters Night Club Co., 399 F.Supp. 889 (E.D.Mich.1975). Mad Hatter involved a dispute concerning the use of the plaintiff's name where the defendant formed a wholly-owned subsidiary in the state of Michigan. Id. This case is easily distinguished from the present case because the contacts with the forum state involved much more than telephone calls and letters. In Calder v. Jones, the plaintiff, actress Shirley Jones, residing in California, filed a libel suit against the National Enquirer in California, which had its principal place of business in Florida. The Supreme Court found that California had personal jurisdiction for several reasons, including the fact that the brunt of the personal and economic harm suffered by the plaintiff took place in California, the focus of the action in question was an industry located chiefly in California, and the action concerned sales in California of magazines containing libelous material. Calder v. Jones, 465 U.S. at 788-89, 104 S.Ct. at 1486-87. In the present case, all of the defendants' activities took place in their respective states and not in the state of Michigan. MICHRAD is suffering the effects of actions of the Michigan legislature. The defendants have acted in accord with federal law and these actions do not give rise to personal jurisdiction.
 
 
 13
 In light of our discussion of the failure of MICHRAD to fulfill the first two parts of the Southern Machine test, an extensive analysis of the third part is not necessary. It is unreasonable to expect that the defendants would reasonably expect to be "haled into court" in Michigan based solely on the defendants' compliance with federal law and the defendants' communications with officials of the state of Michigan.
 
 
 14
 The judgment of the district court is reversed and the case returned to the district court with instructions to dismiss the complaint because of a lack of personal jurisdiction.
 
 
 15
 SUHRHEINRICH, Circuit Judge, dissenting.
 
 
 16
 My colleagues properly rely on Southern Machine to resolve the jurisdictional matter before us. Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir.1968). I read Southern Machine, however, to support personal jurisdiction when, as here, defendants have acted to set in motion operations having a realistic impact on the forum state. Id. at 382.
 
 
 17
 Admittedly, Congress put the defendants in an unenviable position when it mandated they receive low-level radioactive waste from non-sited states. Nonetheless, this fact does not empower the defendants to decide which non-sited states are in compliance with the Low-Level Radioactive Waste Policy Act, 42 U.S.C. § 2021b-2021d, and which are not.
 
 
 18
 The majority repeats that "MICHRAD is suffering from the consequences of actions ... of Michigan's legislature." This goes too far. The jurisdictional analysis does not require that we determine the merits of defendants' compliance claims. The question of who is responsible for MICHRAD's suffering is properly considered only after we grant in personam jurisdiction. Collapsing the jurisdictional and substantive inquiries creates an artificial bar to MICHRAD's ability to litigate in Michigan.
 
 
 19
 States may regulate those activities of nonresident defendants having consequences within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 105 S.Ct. 2174, 2181-82, 85 L.Ed.2d 528 (1985). In the present case, the parties had an ongoing business relationship and the defendants undertook efforts to affect Michigan legislation. Under the circumstances, the defendants must "reasonably anticipate being haled into court" in Michigan. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); see also, Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The forum state's legitimate expression of its regulatory interest is not a denial of defendants' due process rights. Burger King, 471 U.S. at 474, 105 S.Ct. at 2183.
 
 ORDER
 
 20
 The opinion filed on January 24, 1992 is hereby recalled and reissued nunc pro tunc with the addition of the following sentence at the end of the first full paragraph:*
 
 
 
 *
 The correction was incorporated into text of opinion